1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF CALIFORNIA

7

8    JUAN B.P.,

9                     Petitioner,              No. 1:26-cv-01475-TLN-CSK

10          v.                                 A # 209-405-470

11   TONYA ANDREWS, et al.,

12                     Respondents.            **ORDER**

13

14

15          This matter is before the Court on Petitioner Juan B.P.'s[1] ("Petitioner") *pro se* Motion for

16   Temporary Restraining Order ("TRO").[2]  (ECF No. 2.)  Respondents filed an opposition.[3]  (ECF

17   No. 9.)  Petitioner filed a reply.  (ECF No. 14.)  For the reasons set forth below, the Court issues a

18   TRO requiring Respondents to IMMEDIATELY RELEASE Petitioner.  Respondents are further

19   ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas

20

---

[1]      As recommended by the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, the Court omits Petitioner's full name, using only
his first name and last initial, to protect sensitive personal information. See Memorandum re:
Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court
Administration and Case Management, Judicial Conference of the United States (May 1, 2018),
https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]      Since Petitioner's initial filing of his motion for TRO, the Court appointed counsel who is
now enrolled in this case and has filed briefs on behalf of Petitioner.  (ECF Nos. 6, 10, 13, 14.)

[3]      Respondents also filed a motion to dismiss all named Respondents other than the
immediate custodian.  (ECF No. 8.)  The Court declines to rule on the motion at this juncture and
will instead rule on it when considering the Petition on its merits.

1

1  Corpus and enter judgment in favor of Petitioner.

2  **I.    FACTUAL BACKGROUND**

3  The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.)

4  Petitioner entered the United States when he was a toddler and has lived in this country nearly his

5  entire life.  (ECF No. 1 at 2; ECF No. 2 at 2.)  On September 23, 2000, Petitioner was inspected

6  and admitted through the Port of Entry at San Ysidro, California, on a tourist visa.  (ECF No. 14-

7  1 at 2.)  Petitioner has resided in the United States continuously for twenty-six years and has

8  never departed the United States since his initial entry.  (*Id.*)  Petitioner was detained by U.S.

9  Immigration and Customs Enforcement ("ICE") in 2017, but granted a bond of approximately

10  $5,000, which he paid.  (*Id.*)  Petitioner attended every hearing and complied with all conditions

11  of his release.  (*Id.*)

12  Petitioner is now married to a U.S. citizen and is the father of a seven-year-old U.S.

13  citizen child.  (ECF No. 2 at 2.)  Petitioner has always been the primary financial provider for his

14  family and worked as a direct support professional caring for adults with disabilities before his

15  detention.  (*Id.*)

16  Petitioner applied for adjustment of status based on his marriage to a U.S. citizen.  (ECF

17  No. 1 at 3.)  The immigration judge denied adjustment as a matter of discretion, relying on a

18  juvenile adjudication, a misdemeanor conviction, and uncharged allegations in a police report.

19  (*Id.*)  The Board of Immigration Appeals dismissed his appeal on October 6, 2025.  (*Id.*)

20  Petitioner filed a timely petition for review with the Ninth Circuit Court of Appeals, which

21  remains pending.  (*Id.*)

22  Petitioner asserts that he has completed "all requirements related to his juvenile

23  adjudication and misdemeanor conviction."  (ECF No. 2 at 2.)  Respondents note Petitioner has

24  two prior arrests for sexual battery and false imprisonment from March 7, 2017, and March 15,

25  2017, which resulted in a conviction for accessory after the fact battery, in violation of California

26  Penal Code § 32.  (ECF No. 9 at 2.)

27  Petitioner was enrolled in the Intensive Supervision Appearance Program ("ISAP") from

28  March 2017 until his arrest in September 2025.  (ECF No. 2 at 2.)  For years, Petitioner

1    maintained perfect compliance while on the ankle monitor and the only reporting issues occurred

2    after ISAP required him to use the BI Smart Link mobile application.  (*Id.*)  The application

3    frequently malfunctioned by crashing, failing to accept photo submissions, and failing to deliver

4    check-in notifications.  (*Id.*)  ISAP did not notify participants when the application required

5    updates and if the application was not updated immediately, check-in messages would not appear.

6    (*Id.*)  The technical failures caused approximately three to four unintentional missed check-ins

7    over a two-year period.  (*Id.*)  Petitioner always responded when contacted and was never told he

8    faced consequences or re-detention.  (*Id.*)  ISAP officers repeatedly told him he was the least of

9    their concerns because of his long history of compliance.  (*Id.*)  Petitioner's work as a caregiver

10   for adults with disabilities also made it impossible to leave vulnerable clients unattended to

11   complete in-home check-ins.  (*Id.* at 2–3.)  Petitioner has been detained since September 11,

12   2025, when he was arrested at a routine ICE check-in.  (*Id.* at 3.)

13       On February 20, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus,

14   challenging the lawfulness of his civil detention and seeking immediate release. (*See* ECF No. 1.)

15   On January 28, 2026, the Court issued an Order requiring Respondents to file a response.  (ECF

16   No. 6.)  In response, Respondents filed an opposition.  (ECF No. 9.)  Petitioner filed a reply.

17   (ECF No. 14.)

18       **II.    STANDARD OF LAW**

19       For a TRO, courts consider whether a petitioner has established "[1] that he is likely to

20   succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

21   relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

22   interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a

23   showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

24   1127, 1135 (9th Cir. 2011).

25       In evaluating a petitioner's motion, a district court may weigh petitioner's showings on

26   the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the

27   hardships may support issuing a TRO even where the petitioner shows that there are "serious

28   questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of

1   irreparable injury and that the injunction is in the public interest." *Id.*  Simply put, a petitioner

2   must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of

3   hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO.

4   *Id.* at 1134–35.

5        **III.    ANALYSIS**

6        The Court considers each of the *Winter* elements with respect to Petitioner's motion.

7                  A.    <u>Likelihood of Success on the Merits</u>

8        Petitioner establishes a likelihood of success on his claim that his detention violates the

9   Fifth Amendment Due Process Clause.  The Fifth Amendment prohibits government deprivation

10  of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V;

11  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all

12  "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v.*

13  *Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings

14  and detention.  *Id.* at 693–94.

15       Courts examine procedural due process claims in two steps: the first asks whether there

16  exists a protected liberty interest under the Due Process Clause, and the second examines the

17  procedures necessary to ensure any deprivation of that protected liberty interest accords with the

18  Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

19  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

20  the question remains what process is due.").

21                  i.    *Liberty Interest*

22       As for the first step, the Court finds Petitioner has established a protectable liberty

23  interest.  *See Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (D. Haw. Oct. 10,

24  2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that

25  person may retain a protected liberty interest under the Due Process Clause").  "[T]he

26  government's decision to release an individual from custody creates 'an implicit promise,' upon

27  which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to

28  the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

1    2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original).  "Accordingly, a

2    noncitizen released from custody pending removal proceedings has a protected liberty interest in

3    remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL

4    2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional

5    release rises to the level of a protected liberty interest, courts have "compar[ed] the specific

6    conditional release in the case before them with the liberty interest in parole as characterized by

7    *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.

8    Cal. Sept 9, 2025).

9          Here, the Court agrees with Petitioner that he has a protected liberty interest, as he was

10    released by ICE on bond in 2017.  (ECF No. 14 at 4; ECF No. 14-1 at 2.)  Under *Morrisey*, this

11    release implied a promise that he would not be re-detained, during the pendency of his

12    immigration proceedings, if he abided by the terms of his release.  Petitioner's liberty interest has

13    been strengthened over time.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal.

14    2025) (noting the Government's actions in allowing petitioner to remain in the community for

15    over five years strengthened petitioner's liberty interest).  Thus, Petitioner has a clear interest in

16    his continued freedom.

17          Respondents' sole argument in opposition to a TRO is that, at the time of Petitioner's

18    arrest, he was subject to mandatory detention under 8 U.S.C. § 1225(b) because he is an

19    "applicant for admission."[4]  (ECF No. 9 at 2–4.)  This Court has now ruled on this same issue

20    countless times and courts throughout the Ninth Circuit have overwhelmingly rejected

21    Respondents' legal position to find the government's re-classification of individuals under the

22    mandatory detention policy unlawful.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-

23    EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for

24

---

25    [4]     Respondents also request the Court hold its ruling on the merits in abeyance pending the

26    Ninth Circuit's decision regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025) and *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG (HC), 2025

27    WL 2381464 (E.D. Cal. Aug. 15, 2025).  (ECF No. 9 at 3.)  The Court denies this request.  As discussed below, the Court finds Petitioner is likely to succeed on the merits of his claim and the

28    Court will not delay injunctive relief on the prospective chance a pending appeal could change this outcome.

1    taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-

2    01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS mandatory

3    detention policy for a nationwide certified class).

4        As this Court has previously noted, it will not reconsider its position absent new

5    argument, case law, or distinguishable facts.  Respondents' citation to the Fifth Circuit decision in

6    *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) is unpersuasive, as this case is not

7    controlling in the Ninth Circuit.  (ECF No. 9 at 2.)  Thus, at the time of Petitioner's detention,

8    Petitioner was not an "applicant for admission" subject to mandatory detention under

9    § 1225(b)(2).  Petitioner was instead subject to § 1226(a) and was entitled to the process that

10   statute requires, including a bond hearing at a minimum.  Accordingly, Petitioner has a protected

11   liberty interest in his continued freedom protected by the Due Process Clause.

12                        *ii.        Procedures Required*

13       As to the second step — what procedures or process is due — the Court considers three

14   factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

15   erroneous deprivation of such interest through the procedures used, and the probable value, if any,

16   of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

17   the function involved and the fiscal and administrative burdens that the additional or substitute

18   procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

19   forth below, the Court finds Petitioner has established his due process rights were likely violated.

20       First, Petitioner has a substantial private interest in remaining free from detention.  As

21   previously stated, Petitioner was previously released on bond.  (ECF No. 14 at 2.)  Petitioner

22   asserts his detention has caused severe emotional, financial, and physical hardship, as his wife

23   and child depend on him for financial support and his continued detention threatens to

24   permanently separate him from them.  (ECF No. 2 at 3.)  Petitioner notes the stress of detention

25   has also affected his mental and physical health.  (*Id.*)  Petitioner states he has established a life in

26   California, as he has lived in the United States for more than 20 years since he was 1.5 years old.

27   (ECF No. 14 at 4–5.)  Petitioner has extensive family ties here, graduated from high school on

28   schedule, and began pursuing higher education to become an x-ray technician and paused when

                                    6

his son was born.  (*Id.* at 5.)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable, as Petitioner has not received any custody reviews from ICE.  (ECF No. 14-1 at 3.)  Petitioner notes that he was provided with two bond hearings on October 29, 2025 and November 5, 2025, but they were both denied based on jurisdiction before Petitioner could even present his claim.  (*Id.*)  Therefore, Petitioner has been unable to present any substantive arguments at a hearing before a neutral decisionmaker.  Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Respondents only mention Petitioner's criminal history in one paragraph in the introduction section of their opposition brief and do not make any substantive argument that Petitioner is a danger to the community or a flight risk.  (*See generally* ECF No. 9.)  Further, it appears that Petitioner spent time in juvenile hall and was convicted of misdemeanor accessory to a crime in March 2017, for which he served 32 days in jail and completed five years of probation.  (ECF No. 14-1 at 2.)  Petitioner was detained by ICE in 2017, released on bond, and participated in ISAP for many years until he was most recently re-detained in September 2025.  During that

1    time, ICE did not re-detain Petitioner by finding he is a danger to the community or a flight risk.

2    Therefore, on the record before the Court, at the time Respondents detained Petitioner,

3    Respondents had no legitimate interest.  Moreover, the cost and time of procedural safeguards are

4    minimal here.  Notice and custody hearings are routine processes for Respondents with minimal

5    burden.  Indeed, these are the very processes that were owed to Petitioner under § 1226(a).  Any

6    delay in re-detention (if justified) for time to provide notice and a hearing would have been

7    minimal.  It is also less of a fiscal and administrative burden for Respondents to return Petitioner

8    home to await a determination on his immigration proceedings than to continue to detain him.

9    *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025)

10   ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are

11   staggering.").

12       In balancing the government's interest in effectuating immigration laws against the

13   considerable potential for erroneous deprivation and Petitioner's liberty interest, the Court finds

14   that Petitioner was entitled to notice and a hearing at which he could present his substantive

15   claims — at a minimum.  Respondents did not provide either.  Thus, Petitioner has shown he is

16   likely to succeed on the merits of his due process claim.

17                   B.    <u>Irreparable Harm</u>

18       Petitioner has also established he will suffer irreparable harm in the absence of a TRO.

19   The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration

20   detention," including "subpar medical and psychiatric care in ICE detention facilities, the

21   economic burdens imposed on detainees and their families as a result of detention, and the

22   collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Without

23   relief, Petitioner faces the prospect of significant additional time in detention and continued harm

24   while he awaits a decision on his immigration proceedings.  Moreover, "[i]t is well established

25   that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"

26   *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347,

27   373 (1976)).  Thus, Petitioner has sufficiently established irreparable harm.

28   ///

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondents to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and issues a TRO ordering Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's motion for temporary restraining order (ECF No. 2) is GRANTED;

2.  Respondents must IMMEDIATELY RELEASE Petitioner Juan B.P. (A # 209-405-470) from custody under the same conditions he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

3.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining

Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner.  Respondents shall file responsive papers within **ten days of the electronic filing date of this Order**.  Petitioner may file a reply, if any, **within thirteen days of the electronic filing date of this Order**.  **The parties shall indicate in their briefing whether they request a hearing**.  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule; and

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: March 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE