UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JUAN FRANCISCO B.P.,

   Petitioner,

  v.

TONYA ANDREWS, et al.

   Respondents.

No. 1:26-cv-01475-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Juan Francisco B.P.[1]'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents' Motion to Dismiss (ECF No. 8).  For the reasons set forth below, Petitioner's habeas petition is GRANTED and Respondents' Motion to Dismiss is DENIED.

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.)  The full factual background in this case was set forth in the Court's March 13, 2026 Order granting a temporary restraining order ("TRO"); the Court incorporates that background in full here. (ECF No. 15 at 2–3.)  In addition to granting the TRO, the Court ordered Respondents to show cause why the habeas petition should not be granted.  (*Id.* at 10.)  The matter is fully briefed (ECF Nos. 8, 9, 13, 14, 16) and the Court now considers the merits of the Petition.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner challenges his detention without notice or a hearing as violating the Fifth Amendment's Due Process Clause. (*See* ECF No. 1.)  In response, Respondents provide no additional arguments beyond those set forth in their initial opposition to the TRO.  (ECF Nos. 8, 9.)  In those pleadings, Respondents argued that Petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (*Id.*)  Respondents also asked the Court to dismiss all named Respondents other than Petitioner's immediate custodian. (ECF No. 8.)  The Court indicated in its Order granting the TRO that it would rule on the latter argument along with the habeas petition.  (ECF No. 15 at 1 n.3.)

2

### A.   Petitioner Has Named the Proper Respondents

In "core" habeas challenges to present physical confinement "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  However, habeas review is also available for "non-core" challenges to future custody determinations, and in such cases the officials who would make these determinations are proper respondents. *Mejia v. Warden, California City Corr. Ctr.*, No. 2:26-CV-00965-KES-EPG, 2026 WL 805684, at *1 (E.D. Cal. Mar. 23, 2026).

Here, Petitioner presents "core" and "non-core" habeas challenges because he asks the Court to order his "immediate[] release" and to order "Respondents to refrain from re-arresting or re-detaining" him absent compliance with constitutional protections.  (ECF No. 1 at 5.)  The other Respondents named in the Petition are the officials with the legal authority to make future detention and arrest decisions regarding Petitioner and are thus proper respondents in the non-core habeas challenge.

Therefore, the Court DENIES the Motion to Dismiss Respondents other than Petitioner's immediate custodian.

### B.   Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

3

Constitution.  S*ee Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

> ### i.    Liberty Interest

As to step one, the Court finds Petitioner gained a protected liberty interest in continued freedom when released by Respondents.  (ECF No. 14 at 4; ECF No. 14-1 at 2.)  This release was an "implicit promise" that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  *See Morrissey*, 408 U.S. at 482.  As set forth in the Court's Order granting the TRO, Petitioner has extensive community and familial ties in the United States, including working as a direct support professional caring for adults with disabilities and marrying an American citizen with whom he has a seven-year old child that he financially supports.  (ECF No. 2 at 2.)  Petitioner thus has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents' only arguments in opposition to the habeas petition are ones that this Court has repeatedly rejected.  The vast majority of courts across the Ninth Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2).  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Orestes Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of [§] 1225(b)(2)(A); (2) disregards the relationship between [§§] 1225 and 1226; (3) would render a recent amendment to [§] 1226(c)

superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Lepe v. Andrews, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondents put forth no new arguments or facts justifying a different conclusion in this case. (*See generally* ECF No. 16.) Accordingly, Petitioner has a clear interest in his continued liberty protected by the Due Process Clause.

ii.     *Process Required*

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. As the Court previously found, Petitioner was provided with two bond hearings on October 29, 2025 and November 5, 2025, but they were both denied based on jurisdiction before Petitioner could even present his claim.

Therefore, Petitioner has been unable to present any substantive arguments at a hearing before a neutral decisionmaker.  Respondents only mention Petitioner's criminal history in one paragraph in the introduction section of their opposition brief and do not make any substantive argument that Petitioner is a danger to the community or a flight risk.  (*See* ECF No. 9 at 2.)  Therefore, on the record before the Court, at the time Respondents detained Petitioner, Respondents had no legitimate interest in continuing to detain him.  Respondents have chosen to stand on the arguments they previously made to the Court, and have therefore presented no reason for the Court to reconsider its conclusions.  (ECF No. 16.)

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe*, 787 F. Supp. 3d at 1094.  Notice and custody determination hearings are routine processes for Respondents.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.  Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention and received neither.  Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

Finally, Respondents ask that the Court hold this matter in abeyance pending the Ninth Circuit's resolution of the appeal in *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).  The Court declines to delay disposition of this case due to the possibility that a future appellate ruling may change the outcome of one claim.  *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES Respondents' Motion to Dismiss (ECF No. 8).

Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a

pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 14, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE